The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, Oye Oye Oye. All persons have in any manner, form, or business before the Honorable, the Judges of the United States Court of Appeals, are admonished to give their attention, for the Court is now sitting. Godspeed to the United States and this Honorable Court. Good morning. We have a panel of three judges, Judge Wynn, Judge Floyd, and myself. And we have, who do we have, Mr. Corrigan and Mr. Block? Yes, sir. Yeah. All right. It's good to see you this morning. This is unusual conditions, but we're seeming to get this practice down. Maybe we just conduct oral arguments for the rest of time this way, although I much prefer to see you in court. But anyway, why don't we begin with the first case, Grimm v. Gloucester County. And Mr. Corrigan, we'll hear from you first. Thank you, Your Honor. May it please the Court. My name is David Corrigan. I represent the Gloucester County School Board. The Gloucester County School Board and school personnel always treated Gavin Grimm with respect. From the beginning, the school administration and personnel accommodated Grimm's request to be called by his new name and using male pronouns. The only exception was a restroom policy that applied to the entire school system of children in grades kindergarten through 12, ages 6 through 19. In 2015, Grimm filed a lawsuit alleging violation of Title IX and equal protection rights because as a female whose self-proclaimed gender identity was male, he was not allowed to use the boys' restroom at his high school. We find ourselves back before this court after the district court granted Grimm's summary judgment motion and denied the school board's summary judgment motion. And we're asking this court to reverse that decision, remand the case, telling the district court to enter final judgment in favor of the school board. The underlying legal issues are the same as the past, with an added issue concerning whether there's a justiciable controversy. I'll start there with the mootness question. Grimm's claims regarding the restroom policy are moot. At this stage, Grimm is claiming only nominal damages for past violation of his Title IX and equal protection rights. Let me ask you, Mr. Corrigan. Yes, sir. Isn't there a Supreme Court precedent that suggests that a claim for nominal damages is a viable claim, a live claim that can be asserted, especially when coupled with a declaratory judgment? Your Honor, our position on that is that that occurs in situations where compensatory damages are sought but not awarded. Compensatory damages make the controversy justiciable. And then when they're not awarded, nominal damage is an appropriate award. And we're relying on that Flanagan's Enterprises case from the 11th Circuit, which makes that distinction that if you have a, in order to have a live controversy, you can't just have nominal damages. Let me ask you this. In order to prove his constitutional claim, he would have to have some type of damage, and as Mr. Niemeyer pointed out, it would likely be a nominal damage claim. That happens in civil rights cases all over the country. Yes, sir. Is that not correct? Well, our position, again, is that relying on this Flanagan's Enterprises analysis, that if you have a compensatory award requested, but you only get nominal damages, that that would be a justiciable controversy. But when you only seek the nominal damages, that that's not a justiciable controversy. As they said, nominal damages are not themselves an independent basis for jurisdiction. So they were asking for an advisory opinion, as argued. Did the plaintiff request compensatory damages? Originally, back in 2015, yes. They then dismissed the case, and when they brought it back, after he had graduated from high school, they sought only nominal damages. So he graduated high school in June of 17, they filed their first amendment complaint in August of 17, and sought only nominal damages. So this is after the fact. Honestly, we think that the reason was that they didn't want to get into the discovery related to compensatory damages, so they sought only the nominal damages. Which is why we think that this is a situation where applying a rule that that is a moot claim would be appropriate. But they also have a claim to force the school district to change his records, because it impacts his application to college. So where's he going to litigate that except here? I am not arguing that the transcript issue is moot. I am arguing that the application of the restroom policy is moot. Well, it seems to me one hangs on the other, doesn't it? In other words, the change of records flows only if there was a violation of Title IX or the Equal Protection Clause, doesn't it? Correct. And I guess what I'm saying is that they're apparently attempting to assert a separate claim for violation of Title IX Equal Protection Claim based solely on the transcript issue. And that, well, we think that's not a viable claim. We don't think that is a moot claim, because it is, as has been pointed out, not based on the restroom policy alone. We all are aware that the Harris decision is going to come down in a few weeks. Do you agree that regardless of which way it goes, the outcome of the Harris case with regard to Title VII would determine the outcome as to the Title IX claim in this case? I think so. I mean, we've tried to look at it every possible way. And even looking at the arguments in the Supreme Court, it is apparent that what they're trying to decide is on the basis of sex. And what's the definition of sex? And our case, our position is it's a binary concept that you have males and females. And in that case, they were discussing in the oral argument the distinction. If that's the case, then the employer wins. If that's not the case, then you have a different discussion. The school board policy does not discriminate against Grimm on the basis of sex. In order for Grimm to succeed on his claims, this court must find that his declaration that he changed his gender identity from female to male entitles him to be treated in all respects as a boy. The evidence, however, is that Grimm was not a boy. Despite chest reconstruction surgery and hormone therapy, he remained anatomically a female. Importantly, rather than retaining or identifying an expert to prove his sex change, Grimm relied solely on Dr. Melinda Penn, an endocrinologist, who admits chest reconstruction surgery is only a physical change, not a sex change. Dr. Penn never diagnosed Grimm with gender dysphoria and never prescribed social transitioning care or any other modality. Further, the standards of care of WPATH and these other professional organizations do not address transgender student use of restrooms at all. In fact, Grimm's expert testified that what helps one transgender individual deal with gender dysphoria might be different than what helps another transgender person. In other words, and at the time this case was, the facts were being created, there was actually an ACLU position paper that said that providing a third option, single stall restrooms, was a viable option to address concerns of transgender individuals using restrooms. How does the analysis go under a discrimination claim in this context? It seems to me you need some form of comparator. Is he treated differently than other transgender persons, or is he treated differently than boys, or is he treated differently than girls? In other words, how do you suppose the analysis goes? And I'll ask your colleague that, too, when he can think about that. Our analysis is that it's binary, is that there are physiological males and physiological females. Well, I understand that, but let's assume that they're adding a third category. I remember Chief Justice Roberts suggesting that the analysis is probably impossible under the statute to add a third category because you don't know how to conduct the analysis. That's exactly right, that's our position. With two categories, you know how to conduct the analysis. You're either being treated the same as other females, or you're being treated the same or differently than other males. And our position is that this individual, Gavin Grimm, because the physiological sex had not changed, was to be treated with the similarly situated individuals would be females, not males. That's our analysis. The school board policy does not even consider sex stereotypes. Therefore, the line of cases relying on Price Waterhouse versus Hopkins is not applicable. This is where the trial court rested her decision. The school board policy is not based on behavior or appearance or stereotypes. In fact, it's the opposite. All physiological females, no matter how feminine or masculine, can use the girls' restroom or the single stall. That's the same for the males. I want to ask a question regarding the follow-up where we're going in terms of your characterization of how this case should be analyzed, Judge. Nehemiah posits about a third type of classification, maybe a fourth classification. But when we look at this case here, you have these standards that have been set by the WPATH, which the Supreme Court either said something or didn't say something on the Ninth Circuit case recently about it by just not touching it. But we'll leave that alone for right now. But they set forth those standards, and they say that transitioning is an appropriate treatment. So what do you do when the transition occurs, and does that allow them to use a different facility then once you have transitioned? Well, I would point out two things. One, the WPATH standards is based on what we've reviewed. Nowhere does it say what restroom someone should use. Nowhere does it give guidance on which restroom. That's not the question. It's not a question. Let's not jump there too quickly. The question is it makes appropriate certain treatments that can be used, and transition is one. That's the first step. Then once we determine the treatment has occurred and transition has occurred, it's not a question for WPATH to tell you where to go. That's the question. Does this person who's now transitioned go to a different restroom? Our position is that we fully supported. I'm getting feedback sometimes. We fully supported Gavin Grimm with respect to his transitions. His name was changed. Just a minute, Ken. We have everybody mute until you talk. Mute your mic because there is some feedback going on. There's that button on top of the things. Go ahead. Our position is that the school board and the school administration and everybody associated with the schools supported the transition of Gavin Grimm. They changed his name. They called him by his pronouns and his testimony on his own behalf that he was treated well and fairly by the staff and the people there. So that part was done. The sole issue is the restroom. There's no other issue. And the restroom policy, there is nothing from WPATH that says, and you must allow transgender individuals to use the restroom of their choice. That is not. Let me understand that. If a full transition occurs, let's reverse it. You have a male who has transitioned to female or vice versa. And once that occurs, you're saying they still must go to the original assignment even though they transitioned? Not under the Gloucester County plan because they're not forced to go back to the original assignment. They have available the third option, the single stall restrooms as an option, just like everyone else does. Anyone in the school can go where their physiological sex provides or the third option. But they can't go to the other two. Anyone cannot. Right. A person transitioning from female to male or from male to female cannot go to the opposite. The one that is consistent with their gender identity under this school board's policy. That is correct. How do you account for the fact that Grim appears to be non-binary here? He's not fully male, nor is he fully female, as I understand. That's correct, isn't it? Well, the situation is this. Let's start with when this occurred in the fall of 2014. He shows up at school and says, I want to be identified as male. At that point in time, there's no physical change that he has undergone in the record or otherwise. Then the school board comes out with this policy. He begins taking hormone treatments in December of his sophomore year. And that is true. Since then, he has undertaken hormone treatments and has had chest reconstruction surgery. But our position is that does not make him non-binary with respect to his physiological sex, which we're identifying simply, as the superintendent said, as a genitalia. And as long as that's true, and that's still true today, then the school board's position is for purposes of restroom use, that individual has the option of using the restroom consistent with their physiological sex or the available single-stall restroom. That's the position. So a person who has fully transitioned, what would the choice be? The choice would be either to go to the one for which he has fully transitioned or to go to the alternate one. Is that correct or not? In other words, if he takes that next step and he does fully transition, now his genitalia conforms with it, what choice would be for him then? I think I said, you know, however many years ago it was when I was in this court, and I'd say it again today, if someone has had genital surgery, has had complete sex reconstruction and change, I think they now can go to the restroom consistent with their genitals. I think that's what the policy provides. So the difference would be those who have not fully transitioned from your perspective? Yes, sir. Yes, sir. That's the difference. And, you know, when we're dealing with 6-year-olds to 19-year-olds, my understanding from this case and from what the experts have said in this case is you don't even have a chance to have that surgery until your age of majority, which is 18. So it's a very minimal time, and that did not occur with Gavin Grimm. So you've kind of established, at least for a class of individuals like Grimm, I guess what you would call a separate but equal bathroom, right? Well, it's not separate but equal because it's available to everyone. The single-stall restrooms are available to anyone, not just transgender individuals, but anybody who, for whatever reason, personal modesty. But as a matter of fact, no one is going to that restroom except Grimm. I mean, that's a nice statement to make. That's like saying a black school is open to anybody and anyone would go to it, but you never had a white student to go to one of those schools during the separate but equal. I actually went to those schools. I know what I'm talking about on that. You could have. It could have happened because sometimes you wouldn't know whether or not they were black or white. It just never happened. And I think it's nice to say, yeah, anybody can go to it, but the fact of the matter is absolutely no one, unless you tell me otherwise, has ever gone to that restroom that you would know of, not openly. The record is not clear that anyone ever used those restrooms. They were made available to everyone. We know that Grimm never used it because he chose not to ever go in that restroom. Why would you think he did not use it? His explanation was that he thought it was stigmatizing. And was it? I mean, in his mind, it certainly was. I don't doubt that he felt that way. Well, let's talk about it. I mean, we're talking practicality here. He says he was stigmatized by you create a separate restroom only just for him. You otherwise would not have created for anyone except for the fact he's there. He's the only one that uses it. It turns out no one goes there. And so if he goes, is it not a stigma? Well, I would argue that it's not a stigma, but I'm not arguing the legitimacy of his feeling that it is a stigma. They were made available for any student. It was a matter of fact, in terms of the facts, you know, from a legal perspective, maybe it's not, but as a matter of fact, is it not a stigma to create a restroom for a particular individual based upon their orientation or gender identity? And only that person is the person who would go to it and chooses not to go, because since I'm the only one going, it's a stigma. You created it just for me. Again, it was not created just for him. This issue arose because of his concerns and the restroom policy. But when it was created, it was specifically said, this is for any student to use. And you would have done this even if he didn't bring the claim, you're saying? Even if he never brought this up, you were going to set that restroom up? That's what you're telling me. I am not saying that. You know that's not true, is it? Correct. I mean, I understand as a matter of fact why you did it, but the fact of the matter, you created it for him. That's pretty straight up. I mean, you may have a good purpose that you could outline for, but you created it for him, right? To satisfy the situation here. It was definitely created to satisfy the situation, but I would disagree that it was only created for Gavin Grimm. I understand, and we can play with legal words, and I agree. There's something to support where you're going, but the fact of the matter, we're talking reality, you only created that restroom just because of this situation, which is his particular situation. That's why he says it's a stigma. I think that's why he says it's a stigma, yes. All right, why don't we pick this up again? You have some rebuttal. Thank you. Mr. Block, why don't we continue with you? Thank you, Your Honor. Joshua Block on behalf of Plaintiff Gavin Grimm. Gloucester County School Board passed a policy whose only purpose and only effect was to remove Gavin from the boys' restroom and place him in separate alternative facilities that no other student was required to use. The undisputed evidence showed that these separate facilities were not merely different, they were unequal for two independent reasons. The first is what Judge Wynn alluded to, they were stigmatizing and humiliating, and what's key here is that Gavin's feelings of humiliation were objectively reasonable from the standpoint of a person in his position under all the circumstances. This isn't simply you can't claim something is stigmatizing just because you feel like it, there's also an objective prong. And everything we know from the facts of this case, everything we know about what the medical amici have said, everything we know about the experience of transgender individuals, and everything we know about our public accommodations laws shows that it's stigmatizing to be excluded from the facilities that everyone else uses, especially when the cited reason for the exclusion is that the school board suspects other people will be uncomfortable with your mere presence there. That is inherently stigmatizing. The second independent reason why these separate facilities were unequal was that as a practical matter they were inadequate and difficult to access. Now, either of those independent reasons would be a basis for affirming the district court. I think that in order for right there to be a constitutional Well, I'm not following that analysis too well. He, during the course of events here, he had physical traits as a male and identifying traits as a female. And based on that, he has made an election to identify as, to be treated as a male. But that combination is different from somebody who is physically male and identifies as male. And it seems to me we have to figure out how to conduct the analysis under Title IX. Your argument is that this discriminates, but I'd like to hear how you conduct the discrimination analysis under Title IX. Yes, Your Honor, I'd be happy to answer under Title IX. I just want to flag there's also an equal protection claim. I understand that, but let's stick with my question right now. Sure. So for Title IX, you know, he is being treatedly than other boys. The school says it recognizes him as He doesn't qualify biologically as a boy. He qualifies mentally as a boy because he identifies there. But we have this stage in which there is a basis for distinction because his physical makeup is distinct. And, of course, Title IX recognizes that, doesn't it? It authorizes the discrimination between the sexes with respect to bathrooms, locker rooms, showers, and residences on campus, right? Well, I disagree that it authorizes discrimination. It authorizes separate treatment. It says it may provide separate, distinct. In other words, that's the exception. I mean, I don't know if we're going to get into an argument what that means in the statute, but it's pretty clear to me that the statute makes an exception for residences, bathrooms, locker rooms, and showers. And with the idea that men and women or different sexes, male and female, will be the institution can separate them. There was clearly nothing in the record to suggest that Congress, when it enacted that, was thinking of transgender persons. Now we have this transgender situation, and I'm wondering how we conduct the analysis. It seems to me, isn't this better for Congress to handle? Because it doesn't work. As Chief Justice Roberts noted, clearly you try to conduct the analysis, and it falls apart because the criteria used in the statute don't fit these facts. Well, Your Honor, the statute unambiguously prohibits discrimination. It allows certain contexts in which sex can be classified without discrimination. Well, how do you define discrimination? You're treating him different from somebody else? It's unequal treatment that harms a person. I know, but when you say unequal, unequal to whom? Other transgenders or other boys? Both. Both, Your Honor. Well, how can it be other boys? Because he's got female genitalia, and he identifies as a male. And the question is, is that a real difference between that person and a person who has genitalia of a male and identifies as a male? Well, Your Honor, the school doesn't classify based on genitalia. No, the statute does. Well, I don't think the statute says, all the statute says is you can separate restrooms on the basis of sex. And have you looked that word up? There's no definition. There is no definition in the dictionaries at the time, and I've been able to not find any in the dictionaries today. In other words, it's all related to the physiological makeup of a human being. And the criteria, you can say what manifests it, but basically, sex defined in the statute in gender is defining by male and female. Now, there is this transgender status, but my whole point is that Congress didn't address that. And now you're asking us to try to fit this classification into a statute that didn't anticipate it, and we don't know who to be the comparators. Well, Your Honor, I think that what the Supreme Court says in Harris' funeral will be very informative on whether discriminating against someone because they're transgender is discrimination on the basis of sex. Yeah, I think that's a good point, yes. Assuming that Harris rules our way, I think the question is how does the statutory prohibition on discrimination interact with the restroom regulation? And now, when Congress wanted to create an exception, it knew how to do it so explicitly. It said the prohibition on discrimination shall not apply to things like vocational schools or father-daughter dances or fraternities and sororities. There is no statutory exception saying the prohibition on discrimination shall not apply to restrooms. You have a regulation that just says you can provide separate restrooms, but it doesn't override the prohibition on discrimination. Except the statute on its face says you can make separate treatment between the sexes for residential facilities. And the regulation treats facilities as the bedrooms, the bathrooms, the locker rooms, and the showers. But I think that supports my argument because the statutory provision on facilities does not say the prohibition on discrimination shall not apply. I have a quick question. In order for you to prevail, I think, it's going to have to be analyzed under heightened scrutiny. So tell me how you get there. So for the equal protection claims, I think there's two different reasons why this discrimination is heightened scrutiny. The first is that as the court in MAB and the Ninth Circuit in Karnofsky recognized, discriminating against someone because they're transgender satisfies all the criteria the Supreme Court looks to when evaluating something for heightened scrutiny. Transgender people have a history of discrimination. Being transgender doesn't affect one's ability to contribute. Being transgender marks you out for different treatment. And I think the history of the past four years shows that transgender people are politically powerless and vulnerable group. In addition, this is plainly discrimination based on gender. And we've been focusing a lot on the meaning of sex under Title IX and Title VII. When we're interpreting the 14th Amendment, the Equal Protection Clause doesn't mention sex. So this isn't the same sort of statutory interpretation analysis. This is about discrimination based on gender, which is the term the Supreme Court has used since after Frontiero. So I think that it is inherently built on a gender classification. And in addition to that, it is structured in a way that singles out Gavin for different treatment from everyone else. You can either construe it as different treatment from other boys because he doesn't conform to the school's expectations of who should be a boy, despite the fact that Virginia law recognizes him fully as a boy, despite the fact that he uses male restrooms everywhere he goes, including in this courthouse. I think the dispositive reality is on the ground, is that everywhere Gavin goes, except for Gloucester High School, he has recognized a boy, interacts with the world as a boy, uses men's restrooms without any incident. But when he walks through the doors of Gloucester High School, and only in Gloucester High School, he was singled out from the pack, told you are different from other boys, based on this biological gender criteria, which is a moving target. Mr. Corrigan here said genital controls. The 30B6 witness said the opposite. The 30B6 witness said that even if someone had had genital surgery at age 18, the school still wouldn't recognize them consistently with their identity unless they had a birth certificate also. In addition, the 30B6 witness admits that a student could register at Gloucester High School, and if they already had a gender marker change on their birth certificate, they would be able to use the restrooms consistent with their identity. So the conundrum of a case like this is when we start with the basic things, a lot of it is hard not to come to the table with what you kind of intuitively know. We've always recognized, at least in earlier days, the forced belief that man should either be woman or man, and that gender should correspond to one or the other. And those who are different have been treated differently. That's historically true. And as we begin to import that into the Title IX concept, for us to fully understand, I mean, we can lapse into this whole discussion. Well, how are you going to – I mean, you can have those kind of discussions all day long, the factual thing. Well, they're just different. You've got to send them somewhere different. How are you treating them? What's wrong with that? And that has an appeal, except not to the law, because the law under Title IX deals with sex. And when you're dealing with Price Waterhouse, the question then becomes is how do you just limit the definition of sex just to physical characteristics? And Price Waterhouse does not do that. And neither does Title VII. It allows for discrimination based upon sex, but it doesn't require it. And the Supreme Court has even said in itself that legislative intent, in terms of the original legislative intent, is not a controlling weight in these cases. I mean, that was true in the article case, in same-sex type cases, that case. So I think what we are dealing with here is really a fundamental determination of what does the term sex mean in the context of Title IX, and does it go beyond the construction that's in Price Waterhouse? You know, if we can move our minds to the legal issues away from the factual and historical biases that we probably all bring to the table. No one does bring that to the table. I know that, and I believe that. But we're in a different place, and we're dealing with someone who, like Grim, who in 2020 has the availability of hormone therapy, double mastectomy, presents himself as a male in every way, diagnosed with a mental condition, and it is probably a fact that he has demonstrated gender identity. And I submit I'm not sure that gender identity hasn't always been it. I don't know of anyone outside of a birth certificate, I'm not sure you've looked at that, has ever physically examined someone going into a restroom to determine does he possess the physical characteristics. The physical characteristics go beyond the possession of the genitalia, which is just a reality. If someone looks like a male, no one questions that person from going into a male's room. If someone looks like a female, no one does that unless it becomes apparent there's something that looks like it's not there. So in terms of the law in Title IX, it really comes down to how we look at the word sex. And when we look at it in the context of Price Waterhouse, the question becomes, is it limited to physical characteristics, or is it in a situation as Grim here, who has demonstrated by all of these different medical procedures and his own psychological identity, that it's a gender identity thing, and that becomes the basis for discrimination. I think that's exactly right, Your Honor. But I also think that I don't want to concede that the school's policy is based on even a uniform set of characteristics. The school is unable to generalize whatever its rule is to anyone besides Gavin. So if you ask, well, what about this other person who might not have typically male genitalia, the school says, well, I have no idea how it would apply to that person. What about this other person whose birth certificate is different than their sex assigned at birth? In every single case, the school keeps coming back to saying, I only have a sample set of one. The only person I know about is Gavin, and the only context in which this comes up is transgender people. The trouble with a case like this has to do with, you know, you do want to, when you're dealing with statute, you do want to import the intent of converse when you think it's ambiguous. But the trouble, of course, is as we approach it, what's difficult for us as judges and those who look at these cases, is how do we look at these cases and cast aside the difference between the person who was in a meeting, when they were having a meeting, and who's yelling all these obscenities to him and saying these unreal things, to a person who inherently you kind of feel those things, but you would never say them. And so I think that's kind of where we're going with this case and why this is a difficult case for us right now, is because there is that tension between what we all have come to believe is what should happen and the modern reality of there have always been individuals who exhibited different gender identity tendencies outside of what biologically may have been assigned to them. And now a modern society begin to recognize that should we treat them differently, or should we allow them to, I guess, identify with the one in which they identify. Now, let me ask the other question, because this is where it gets difficult to me, is I want to know how expensive it is. Are there individuals who don't identify with either? Either male or females. Yes, I think there would be a fundamentally different claim and a fundamentally different injury. Here, Gavin isn't saying he's harmed by the existence of sex-separated restrooms. He's been excluded from the boys' room. All he wants to do is access the existing restrooms. When you say he looks like a male, can you describe him? I don't have any pictures. I'm not sure we're permitted, but it sounds like you're saying he's had a double mastectomy, he's had hormone therapy, he can grow hair, I presume facial hair. Yes, Your Honor.  And if I'm understanding the government's position, he can't go into females' room, even though he has female genitalia, can he? Well, I think they say the policy doesn't prohibit him from doing so, but you saw that I don't think my friend was willing to actually go that far. I think the argument here is reminiscent of the argument that laws prohibiting same-sex couples from marrying didn't discriminate because anyone, whether gay or straight, could marry someone of a different sex. You know, the purpose and inevitable effect of this policy was that Gavin would be using a separate restroom. That's expressly what the policy contemplates. It says, you know, whereas some students question their gender identities, therefore, transgender students will be provided an alternative private facility. Mr. Block, I thought Gavin Grimm elected not to go to the women's bathroom. The policy of Gloucester School would be that that's the bathroom that he would go to because of his physical makeup. But he elected not to go there. He felt uncomfortable because he identifies as male. But there is, he was under the policy, given a classification, which he disagreed with, which was we're separating our bathrooms on the basis of physiological sex. And he basically felt uncomfortable there and wanted to go to the boys. And, of course, that brought on this lawsuit because the question is whether they have to let him go to the boys based on his choice, based on identification as opposed to physiology. Well, Your Honor, I think the assertion that the school says that he's technically allowed to use the girls' room just shows the underlying irrationality of their policy. The policy is supposed to separate students based on physiological sex characteristics. But under the board's policy, a transgender woman with typically female breasts would be going to the men's restroom. And under the board's policy, a transgender boy who might, if he had hormone blockers and hormone therapy, might have the same muscle build as a linebacker and facial hair would use the girls' restroom. So the policy only serves its asserted justifications if the transgender student goes to separate facilities. That really makes for a very difficult question. As I recall, the school board did, in fact, allow him to go to the male restroom. And it seems like things were going well until one student made a complaint, followed by some more, which it couldn't have been based upon the characteristics of the person unless it was the manner to use them, but they had stalls in there. So one person in this triggers this. And I just really wonder if he looks as much male as you describe, it could be a linebacker, it would seem to me a lot more females would be complaining than males if someone came in with a beard to use the women's restroom. I'm not understanding, and maybe I'll ask the board about that, as to whether he, because he has female genitalia, would be allowed to continue to use it, notwithstanding his outward male appearance. Well, Your Honor, I think that, you know, the students at the school knew that he previously had been enrolled with the female sex assigned at birth. So this happened to be someone who they knew was transgender. But I think that shows the policy doesn't really turn on physiology. It turns on people's social knowledge of whether someone is transgender or not. It's a little more than that. It's a little more than that because, I mean, this isn't arbitrary. The example comes up, and it's a current example we don't have here. But how about a woman, a man who identifies as female, and he then goes out and says, I want to compete against the women on the track team. And that happened up in Connecticut recently, and the transgender woman won the race. And the question is, is the policy of separating physiologically? And then how about the locker rooms where they take showers? This is in high school, and they're taking showers. And Gavin Grimm comes into the men's locker room and takes a shower. Isn't there something more than just this arbitrariness that you're claiming? Well, Your Honor, I disagree that people are taking showers in the locker room. At every context in which this has actually been litigated, it has shown that transgender students are using locker rooms without anyone seeing anyone else naked. People are changing T-shirts for gym class, maybe gym shorts. But the facts on the ground are very different. You can construct anything to get by this, but the real question is, how about if you have an open shower? I went to a college where the showers were open. I played college sports. We came afterwards, and everybody saw everybody naked. Now, that still is an existing situation. You can hypothesize away the facts and say there's no criteria because everybody has a cubicle and everybody has a changing room. But that isn't always the case, number one, and that's not part of the policy. The policy is based on the fact that there are some differences that make a difference. And the competition, for instance, of sports, is going to be a big debate because now the male who grew up to age 14 as a male and now identifies as a female wants to compete with female sports. Everybody knows that there's a problem there. Even the military academies had different standards for males and females in terms of physical push-ups and pull-ups and all these other criteria. So it's not as benign as if you seem to make it, and any classification is not irrational. Well, Your Honor, the fact is that in Virginia, the Virginia High School League has a policy that allows participation on sports teams consistent with your gender identity. But more relevant to hear, and Judge Niemeyer is definitely positing some great questions, but those are not questions before us. Nor is it a locker room question. This is an as-applied challenge to the restroom part of this policy. We could delve into the possibilities of other things there. That's not before us. It's not before the Supreme Court right now. And, you know, while it would be interesting to delve into it, and that's what I mean. Historically, how do we divorce our minds from all the things that we can think of, as to what we traditionally have come to accept is the way things should be done from the reality of modern science? I mean, even in the track instance, if modern science went to the place that it would completely, physiologically change a person to a female, as though you've never been a male, how would that handle? I don't know. That's not before us. We're dealing with an as-applied challenge to the restroom part of this policy. Unless we can find there, then we're going to be in Never Never Land discussing things that could happen all around the world and making sense to a lot of people, but not to the law. You can answer that question, and then we'll move on. Go ahead. All right, thank you. Well, I completely agree with that, obviously. I do want to say that we actually tried to develop facts about how the policy would apply to locker rooms, and opposing counsel wouldn't let the witness answer the question because the opposing counsel said, this is just about restrooms, any questions about locker rooms are irrelevant. So I think we're not dealing with hypothetical facts. Equal protection depends on the facts on the ground in an individual case. So how someone might be treated in a different situation under different facts, I don't think can control whether this real person in front of the court, suffering a real injury with real facts, is entitled to a judicial remedy. All right. Thank you, Mr. Block. Mr. Carligan? Your Honor, I don't have anything else. I'm sure someone might have a question for me, though. Well, I think we've been through it. I would like to have a clarification that under his present situation that you maintain that, I'm going to assume he may have a beard, he looks like a man. Let's assume he looks like Deacon Jones used to look in the old days. I can't think of anyone who looks more manly. He would be allowed to go and use the female restroom now? And keep in mind, he still has female genitalia, but everything else looks like a man. You would permit that? Under the policy, the answer is yes, he would be allowed to use the ladies' room. And the Price Waterhouse prevents this school from saying he can't, because that would be stereotyping. You look too masculine. We can't let you use the girls' room. You can't have that under the Price Waterhouse analysis. So your identity does not have any effect here? Correct. The decision of the school board, and we would argue the statute and the regulations, is based on this binary concept. There are men and there are women when it comes to their genitals, and that's how we distinguish them. Yes, sir. Thank you. All right. Thank you, Mr. Gargan. We, as you know, in the Fourth Circuit, we have the tradition of coming down off the bench and shaking hands. And, yes, spiritually we shake hands with you. We appreciate the arguments. They're very helpful, and you both did a wonderful job. And we wish you well. I hope we return. I mocked the situation where maybe this could be a permanent arrangement. I personally very much miss being with counsel in the courtroom and coming down and greeting counsel. And I hope, at least that's my personal hope, that someday we can get back to that. But today this will have to suffice, our greetings to you from the Fourth Circuit, and all the best to you both. Thank you, Your Honor. Thank you very much. We'll proceed to the next case on the agenda. Thank you.
judges: Paul V. Niemeyer, James A. Wynn Jr., Henry F. Floyd